UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAE ROBINSON,

    Plaintiff,

v.                                         Case No. 25-C-779

MARYSSA SMITH, JAY VAN LANEN,
MATUSHAK, and BUKOWSKI,

    Defendants.

## SCREENING ORDER

Plaintiff Jae Robinson, who is currently serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On July 17, 2025, the Court screened the complaint and after concluding that it contained unrelated claims against different sets of Defendants in violation of Fed. R. Civ. P. 18 and 20, gave Robinson the opportunity to file an amended complaint, which he did on August 11, 2025. This decision screens the amended complaint, as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

As explained in the original screening order, the Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies

with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted.  To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

### ALLEGATIONS OF THE AMENDED COMPLAINT

Robinson asserts that on June 14, 2024, Officer Maryssa Smith conducted a cell search, at which time she found a dryer sheet attached to the back of Robinson's fan.  Robinson explains that inmates commonly use dryer sheets as an air freshener.  He states that the sheet had detergent and Axe body wash on it.  Officer Smith informed Robinson she was going to have the sheet drug tested.  Later that day, Defendant Lieutenant Bukowski informed Robinson that the sheet had tested positive for cocaine and buspirone.  Robinson asserts that he insisted on his innocence and initially refused to cuff up.  Robinson states that he agreed to cuff up after another officer (who is not a defendant) informed him he could have the sheet tested a second time.  Dkt. No. 8 at 2-3.

While Robinson was insisting on his innocence, Defendant Captain Van Lanen approached and began to argue with Robinson.  Van Lanen allegedly accused Robinson of misusing his depression medication and threatened Robinson by saying, "I'll kick your ass."  According to Robinson, Van Lanen also refused to accept Robinson's eventual agreement to cuff up.  About an hour later, Van Lanen returned to the cell front, at which time Robinson allegedly informed Van Lanen that he was willing to cuff up.  Robinson asserts that Van Lanen instructed him to put on a spit mask, which Robinson did.  Robinson also asserts that he had to kneel so that ankle shackles could be put on because Van Lanen ordered a "back of cell" restriction.  Robinson asserts

2

that he did not engage in any behavior that warranted a spit mask or back of cell restriction. *Id.* at 3-5.

A few days later, on June 17, 2024, Robinson was allegedly offered sixty days in segregation and sixty days loss of recreation. Robinson asserts that he refused the offer. The next day, on June 18, 2024, Defendant Lieutenant Matushak asked Robinson why he was fighting the conduct report. Robinson states that he told Matushak he was innocent, to which Matushak allegedly stated that the IONScan drug testing machine was 100% accurate and that there would be no secondary test. He also informed Robinson that the dryer sheet would be destroyed. *Id.* at 5.

The hearing on the conduct report happened on June 24, 2025. Robinson asserts that he pointed out that Bukowski had informed him that the sheet had tested positive for cocaine and buspirone, but the conduct report stated that the sheet tested positive for cocaine and oxycodone. Robinson states that he was not allowed to call his witness (Robinson does not identify the witness he asked to call), and his request for a second test of the sheet was denied. Robinson received sixty days in segregation and sixty days loss of recreation; he was released from segregation on August 16, 2024. *Id.* at 5.

Robinson explains that on August 27, 2024, he went to see his psychiatrist, who told him there were reports that he had misused his bupropion medication, so it was cancelled. A little more than a month later, on October 18, 2024, Robinson conducted a medical records review, at which time he allegedly learned that Van Lanen had instructed nurses to claim that the drug test had come back positive for Robinson's depression medication rather than cocaine. Robinson asserts that Van Lanen also instructed the nurses to send the report to the Madison psychiatry office to discontinue Robinson's medication. About a week later, Robinson spoke to Van Lanen and asked

3

why, if the IONScan test is 100% accurate, he told the nurses the test was positive for his medication rather than cocaine. Van Lanen allegedly responded that "it comes up as both." *Id.* at 5-6.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Robinson first asserts that Smith and Bukowski violated his rights because they drug-tested a dryer sheet that was found in his cell during a search. But these officers did not violate Robinson's rights simply because they made efforts to detect the presence of drugs, which obviously serves the penological purpose of keeping the prisoners safe and maintaining security. Robinson suggests that Smith and Bukowski tested the sheet even though they knew that the IONScan is not 100% accurate, but Robinson includes no factual allegations to support a reasonable inference that the drug-testing machine is not accurate or that Smith and Bukowski knew that the drug testing machine is not accurate.[1] Indeed, Robinson asserts that corrections staff consistently maintained that the machine is 100% accurate. Smith and Bukowski could not have been deliberately indifferent to a harm (*i.e.*, punishment for an allegedly false positive) that they did not know existed, and their perhaps mistaken belief that the test results are reliable amounts to at most negligence, which is not actionable under the Constitution. *See Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) ("Deliberate indifference is a subjective mental

---

[1] Numerous prisoners insisting that the drug-testing machine's results are inaccurate does not reasonably suggest that officers knew the machine produces false positives.

state; the official must have actually known of and consciously disregarded a substantial risk of harm.").

Nor does Robinson state a due process claim against Matushak, who allegedly decided Robinson was guilty based on the drug-testing machine's results and who allegedly refused to allow Robinson to call an unidentified witness or re-test the dryer sheet. "To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). Robinson asserts that he was housed in a dirty segregation cell without the opportunity for recreation for sixty days. Under Seventh Circuit precedent, standing alone, any stay in segregation less than six months "is not enough to implicate a liberty interest that triggers due process rights." *Id.* (citation omitted). Further, although Robinson describes harsh conditions, they do not appear to rise to the level of constitutionally problematic conditions. As such, the Court cannot reasonably infer that Robinson had a constitutionally protected liberty interest.

Nevertheless, even if Robinson *had* sufficiently alleged that he possessed a protected liberty interest, his allegations do not suggest that his due process rights were violated. The Seventh Circuit has clarified that "inmates facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit," are entitled to only "informal due process." *Id.* at 966. "[I]nformal due process requires only that an inmate is provided (1) notice of the reasons for the inmate's placement in segregation and (2) an opportunity to present his views, for instance, in a written statement or at a hearing." *Id.* According to the amended complaint, Robinson received notice of the charges in

the conduct report and was able to present his version of what happened at a disciplinary hearing. Robinson therefore received the process he was due.

Robinson also fails to state a due process claim based on allegations that Matushak did not permit him to seek independent re-testing at his own expense of the dryer sheet to confirm that the machine did not produce a false positive. Due process demands that "the findings of a prison disciplinary board have the support of some evidence in the record." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). It is not the role of the Court to "assess the comparative weight of the evidence underlying the disciplinary board's decision." *Id.* The only question the Court must answer is "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* The Seventh Circuit has explained that a single positive test amounts to "some evidence" and therefore satisfies the requirements of due process. *Easter v. Saffle*, 51 F. App'x 286, 289 (7th Cir. 2002) (citing *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993), for the proposition that "due process does not require prison officials to provide second urinalysis by impartial laboratory"). The appellate court further observed that "[t]hough the risk of false positives has not been entirely eliminated, we agree . . . that the use of the test results may be relied upon as sufficient evidence to warrant prison discipline . . . ." *Id.* (citations omitted).

Robinson also does not state a retaliation claim against Van Lanen based on allegations that Van Lanen ordered harsher restrictions than warranted because he and Robinson had argued about Robinson's innocence. To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). Robinson fails to satisfy the first element because

arguing with an officer is not protected speech. *See Watkins v. Kasper*, 599 F.3d 791, 797-98 (7th Cir. 2010) (holding that disagreeing with staff about a policy in front of others is not protected speech under the legitimate penological interests test).

Finally, Robinson does not state a deliberate indifference claim against Van Lanen based on allegations that he directed nurses to represent that Robinson had misused his medication, even though Van Lanen allegedly knew that the drug test had indicated a different drug. It is not clear whether Robinson's medication was cancelled because it was believed that he misused drugs generally or because he misused his medication specifically, but in either event, Robinson fails to state a claim because he does not allege that the cancellation of the medication harmed him, and the Court will not speculate on this point. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) ("In order to succeed in a §1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages."). Indeed, Robinson does not allege that he challenged the cancellation of the medication or requested that it be reinstated or replaced with a different medication, suggesting that the cancellation did not negatively impact him.

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Green Bay, Wisconsin this 25th day of August, 2025.

William C. Griesbach
United States District Judge

7

Case 1:25-cv-00779-WCG    Filed 08/25/25    Page 7 of 8    Document 9

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.